UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 09-12090-JLT |
| WIRELESS PROPERTIES, LLC, | * * | |
| Defendant. | * * | |

MEMORANDUM

May 25, 2010

TAURO, J.

I.      Introduction

This action arises out of an agreement between Plaintiff General Dynamics Information Technology, Inc., and Defendant Wireless Properties, LLC, by which Plaintiff was to provide Defendant with telecommunication infrastructure support services. Through its Complaint, Plaintiff now seeks to recover overdue payment for services already rendered to Defendant. Presently at issue is Defendant's Motion to Stay Proceedings and Compel Arbitration [#10]. For the reasons set forth below, Defendant's Motion to Stay Proceedings and Compel Arbitration [#10] is ALLOWED.

II.     Background[1]

On October 26, 2007, Plaintiff and Defendant entered into a Master Services Agreement

---

[1] This court sets forth the facts as presented in the Complaint and construes them, as it must at this stage of the proceedings, in the light most favorable to Plaintiff.

(the "MSA") by which Plaintiff agreed to provide telecommunication infrastructure support services to Defendant.  Pursuant to the MSA, Defendant sent Plaintiff periodic requests for price quotations as to specific projects it wished to pursue.  Plaintiff provided a statement of work in response and Defendant, in turn, issued a purchase order if it decided to proceed with the project.

Unless the parties explicitly agreed otherwise, the MSA governed the terms of each project.  The MSA required Plaintiff to provide Defendant with monthly invoices, each of which Defendant had an obligation to pay within thirty days of receipt.  Any undisputed items on an invoice that were not paid within thirty days accrued interest at a rate of one percent per month.

Pursuant to the Dispute Resolution clause contained in paragraph 20 of the MSA, "any dispute or controversy between the Parties arising under or in connection with the Agreement ('Dispute') shall be settled exclusively"[2] by means of binding arbitration to be held in Nashville, Tennessee.  Paragraph 20 and Paragraph 7(b) of the MSA provide for a narrow exception to dispute resolution by arbitration if, and only if, the dispute at issue is confined to the recovery of payment on undisputed invoices.  Under such circumstances, the MSA permits Plaintiff to pursue a remedy "through initiation of litigation in a court of competent jurisdiction in the Commonwealth of Massachusetts."[3]

The MSA also contains a Force Majeure/Excusable Delay Provision which temporarily excuses nonperformance in the case of an enumerated Force Majeure event or due to excusable delay "…caused by Customer or its employees, agents, suppliers or other third party contractors supporting Customer, provided that such circumstances were not reasonably foreseeable by such

---

[2] See Compl., Ex. 1, ¶ 20.

[3] Id. ¶ 7(b).

Party and, by the exercise of reasonable commercial due diligence, could not have been prevented by such Party."[4]  The Provision specifies that, in the face of a Force Majeure event, the affected party must promptly provide notice to the other party, at which time it may suspend performance without penalty.  But if the nonperformance "exceeds thirty days from receipt of the notice of the Force Majeure Event, either Party may terminate for convenience the affected Purchase Order."[5]  The Force Majeure/Excusable Delay Provision does not, however, specify the protocol to be followed by the parties in the case of excusable delay.

Since the Parties entered the MSA, Defendant has issued purchase orders for, and Plaintiff has subsequently provided, $1,376,000.00 in services.  But as of July 2008, Defendant began to fall behind in paying the invoices in a timely manner.  In December 2008, Plaintiff made a formal demand for immediate payment of the $912,529.21 owed to it as of that time.  On April 6, 2009, Defendant sent a letter to Plaintiff acknowledging that it owed Plaintiff such amount and stating that it was in the process of selling some assets, so as to be able to remit payment.  On May 28, 2009, Defendant made a payment of $100,000 and promised to pay the balance of the outstanding debt within two weeks.  On July 10, 2009, Defendant made an additional payment of only $25,000.

From May 2009 until the end of October 2009, Defendant made repeated promises to pay all outstanding amounts due Plaintiff and indicated that it planned to conduct a sale of additional assets to facilitate payment.  On October 29, 2009, however, Defendant informed Plaintiff that it was invoking the Force Majeure/Excusable Delay Provision contained in paragraph 10 of the

---

[4] Id. ¶ 10.

[5] Id.

MSA because a third party had failed to provide it financing which would have enabled it to submit payment on the overdue invoices. In response, Plaintiff took the position that a failure to secure financing did not amount to either a Force Majeure event or excusable delay and, in any event, the failure to provide financing had occurred over a year prior and, thus, Defendant had failed to promptly notify Plaintiff of the alleged Force Majeure event.

Defendant still has not paid the balance of its debt due Plaintiff. As of the time of the Complaint, the amount owing was $899,002.96.

III.   Discussion

Plaintiff's Complaint characterizes this action as an effort to recover payment on undisputed invoices, which is not subject to arbitration as per paragraphs 20 and 7(b) of the MSA. And, notably, Defendant has indeed never disputed the amount due on the invoices. Nonetheless, Defendant seeks an order from this court compelling the Parties to arbitrate the present dispute because the dispute is not confined to the issue of the undisputed invoices. Rather, Defendant contends that the face of the Complaint demonstrates that any recovery depends upon a threshold determination of whether the Force Majeure/Excusable Delay Provision applies to the underlying facts and how such application impacts the recovery to which Plaintiff is immediately entitled on the undisputed invoices.[6] This court agrees with Defendant and must compel arbitration.

---

[6]See Compl. ¶¶ 22-23 ("22. On October 29, 2009, in response to an email requesting that Wireless provide a plan for satisfying the overdue and undisputed debt, Wireless informed GDIT that it was invoking the force majeure/excusable delay provision of the contract. Wireless stated that a third party had failed to provide financing, and that this constituted a force majeure event. 23. On October 30, 2009, GDIT responded with a letter to Wireless, stating that the failure to secure financing did not amount to a force majeure event. The letter further stated that, even if the event did constitute a force majeure event, the failure of the third party to provide financing had occurred over a year prior, and thus Wireless has failed to meet the 'prompt notice' requirement of the contract. Finally, the letter explained that, under the contract, a force majeure

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed to so submit...."[7] But neither may a Party avoid arbitration if it has agreed to such. Accordingly, the Federal Arbitration Act (FAA) requires courts to stay judicial proceedings and compel arbitration where the parties have previously agreed to arbitration as the sole means of resolving a dispute.[8] "[W]hether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties."[9]

As a general matter, where a contract contains an arbitration clause, there is a strong presumption in favor of the arbitrability of the dispute.[10] This presumption gives way *only* when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[11] While a court may not "read out of an arbitration clause an explicit limit upon the scope of that clause"[12] to which the parties have agreed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an

---

event only excused Wireless from its performance for a period of 30 days.").

[7] AT&T Techs. v. Communications Workers of America, 475 U.S. 643, 648-49 (1986) (internal quotations and citations omitted).

[8] 9 U.S.C. § 3.

[9] AT&T Techs., 475 U.S. at 648-49 (internal quotations and citations omitted).

[10] Id. at 650.

[11] Id.

[12] Combined Energies v CCI, Inc., 514 F.3d 168, 172 (1st Cir. 2008).

allegation of waiver, delay, or a like defense to arbitrability."[13]

"A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."[14] Because the Parties here disagree only as to whether the current dispute falls within the scope of the MSA's arbitration clause, that is the sole question analyzed below.

The Parties agreed to arbitrate any claims "arising under or in connection with" the MSA, except for those claims raising *only* the issue of recovery on undisputed invoices.[15] In the Complaint, Plaintiff seeks to recover amounts due on overdue invoices. Defendant does not now, nor has it ever, disputed the amount owed Plaintiff on those invoices. Thus, at first blush, this dispute would indeed appear to fall under the narrow exception to mandatory arbitration for recovery on undisputed invoices.

But, as set forth in the Complaint, Plaintiff and Defendant also disagree as to whether the nonpayment is excused, at least temporarily, by the Force Majeure/Excusable Delay Provision of the MSA. In order to proceed to a determination of what recovery is due Plaintiff, therefore, the decision-maker must necessarily interpret and apply the Force Majeure/Excusable Delay Provision to the underlying facts as a threshold matter.

This court is sympathetic to Plaintiff's argument that failure to secure third-party financing is not the type of unforeseeable event that should trigger excusable delay protections.

---

[13] Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

[14] Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 46-47 (1st Cir. 2008).

[15] See Compl., Ex. 1, ¶ 7(b), 20.

And this court agrees with Plaintiff that Defendant's eleventh-hour invocation of the Force Majeure/Excusable Delay Provision gives off an air of insincerity.  But, nonetheless, this court is bound to resolve the present motion to compel in accordance with the allegations set forth in Plaintiff's Complaint.  And those allegations indicate a dispute between the Parties over the construction and effect of the Force Majeure/Excusable Delay Provision, to which both Parties agreed to be bound when they entered the MSA.

The Force Majeure/Excusable Delay Provision specifically states that "The Party who has been affected by a Force Majeure Event shall promptly give notice to the other Party...at which time performance of this Agreement to the extent affected by the Force Majeure Event shall immediately be suspended without penalty to such affected Party....  If the period of nonperformance exceeds thirty (30) days from receipt of notice of the Force Majeure Event, either Party may terminate for convenience the affected Purchase Order."[16]

Thus, the language of the Provision makes clear that, in the case of a Force Majeure event, the affected party must provide prompt notice in order to suspend performance and that such nonperformance is typically limited to thirty days.  Plaintiff contends that this thirty-day limitation renders the Force Majeure/Excusable Delay Provision irrelevant to the present dispute because Defendant invoked the protection of the Provision on October 29, 2009, and Plaintiff did not file the instant Complaint for more than thirty days thereafter.  It is Plaintiff's opinion, therefore, that Defendant has already received the full benefit of the Force Majeure/Excusable Delay Provision, even assuming that Defendant's initial invocation of the Provision's protection was proper.

Importantly, however, the Force Majeure/Excusable Delay Provision does not categorize

---

[16]See Compl., Ex. 1, ¶ 10.

excusable delay as a Force Majeure event. Rather, it presents delays due to unforeseen causes as a separate type of hindrance to performance that may serve to excuse certain noncompliance with the terms of the MSA. And the Parties dispute whether the MSA contemplates following the Force Majeure protocol where, as here, an excusable delay in performance is alleged, rather than a Force Majeure event. This court might conjecture that the Parties could reasonably have intended for excusable delay to be addressed by a method similar to that used to address Force Majeure events. But, notably, that dispute does not fall within the narrow exception to mandatory arbitration for recovery on undisputed invoices. Rather, it is a question of the construction of the underlying contract language and, thus, it is a dispute "arising under or in connection with" the MSA that an arbitrator must resolve.

      This court is obliged to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.[17] Because this court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"[18] over the interpretation and applicability of the Force Majeure/Excusable Delay Provision, it also cannot conclude that Plaintiff has overcome the strong presumption in favor of arbitrability.

IV.    <u>Conclusion</u>

---

[17]<u>Moses H. Cone Memorial Hospital</u>, 460 U.S. at 24-25.

[18]<u>Id.</u>

For the foregoing reasons, Defendant's Motion to Stay Proceedings and Compel Arbitration [#10] is ALLOWED.

AN ORDER HAS ISSUED.

                                                          /s/ Joseph L. Tauro
                                                          United States District Judge